The opinion of the Court was delivered by
Dawkins, J.
The actions in the above cases were brought on two promissory notes given before the passage of the Act of the Legislature of December, 1861, known as the Stay Law, and the only question for the consideration of the Court arises under the fifth section of that Act, ami the Acts subsequent thereto continuing in force the s»H until December, 1866. /
If that section suspended the operation of the stat^^HJ limitations, or in effect extended the time the were entitled to recover, the (Circuit decision *160 sustained. If it did not have tbe effect to do either, the decision was erroneous and should be reversed, more than four years having elapsed between the times when the causes of action arose, and the commencement of the suits thereon.
Two cases have been before 'this Court in which the constitutionality of the first section of the Act has been considered. In the first case, the State vs. Carew, (13 Rich. 498,) it was held that the provisions of the Act which interdicted the service of process on causes of action which arose previous to its passage, were unconstitutional and void. The second was the case of Barry vs. Iseman and others, (14 Rich. 129,) in which it was held that the same Act was constitutional and binding, so far as it related to future contracts made and to be executed within the State.
It has been held in many cases that the remedy for the enforcement of a contract may be changed or modified without impairing its obligation, and it is no where better stated than in the celebrated case of Sturges vs. Crowninshield, (4 Wheat. 200 and 207,) (which has been so often quoted of late that it is almost threadbare,) where it says, “ without impairing the obligation of a contract the remedy may be modified as the wisdom of the nation may direct, and statutes of limitations relate to remedies furnished in the Courts.” (Angel on Lim. 18.) If the question presented here was whether the first section of the Act of 1861, which forbids the service of process on causes of action arising previous, was constitutional, this Court would recognize the authority of the case of the State vs. Carew.
Tí was not contended seriously that if one part of an Act ■ft| unconstitutional it vitiated the whole, or that the same Hkii might not be unteonstitutional as affecting any class HR^s, and constitutional as to others, nor was it denied that H^B|islature might extend the statute of limitations be-B||U& was complete (without impairing the obligation *161 of the contract. In fact its extension gives additional vitality to tbe contract and furnishes no ground of complaint to debtor or creditor. The debtor if he wishes to pay can do so, and if the creditor desires to sue, there is nothing in its extension to prevent him. The argument mainly relied on was that the first section of the Act did not embrace causes of action which arose previous to December, 1861; and if in terms it did so, it was unconstitutional and void, and there was no impediment to the plaintiffs’ suing at any time, therefore they are not entitled to the benefit of the fifth section.
The fifth section is in these words: “That the operation of the statute of limitations be and the same is hereby suspended during the period in which this Act is of force, so far as applicable to causes coming within the meaning of this Act.”
As before remarked, the Legislature had the constitutional right to extend or suspend its operation, which is practically the same, and the question is, have they done so? What were the causes coming within the meaning of the Act ?
The first section forbids the service of any process for the’ collection of money until after the expiration of the first session of the next General Assembly. There is no distinction made as to the time when the causes of action arose, and they unquestionably “ meant ” and intended to embrace all money demands. If not intended to apply to causes of action then existing, the fifth section was unnecessary, and we cannot suppose the Legislature would be guilty of the folly of passing an Act suspending the operation of the statute of limitations, if intended to apply only, to causes arising thereafter, when the Act itself was limitad, in its duration to one year. /
It would be more reasonable to conclude that by/the fifth section the Legislature “ meant ” to apply i/ ex *162 clusively to causes of action then existing, and when they said to the creditor, you must stay your band in the collection of your debt, they gave him the assurance that he should not be prejudiced by the delay. It is said, however, that this Act was never “ of force ” so far as the cases under consideration are concerned. The language is “ suspended during the period in which this Act is of force.” This Act and the successive Acts similar have been of force until December, 1866, and if the meaning was to embrace all money demands, there is no reason why the plaintiffs should not have the benefit of the suspension of the statute. If the Legislature had said that the statute of limitations shall be suspended on all money demands until the adjournment of the first session of the next Legislature, there can be no doubt but that they had the right and power to do so; and upon a fair construction of the Act that is precisely what they intended to do and did. It is the business of the Court to give effect to the intention of the Legislature when it can be ascertained, and not to lend too ready an ear to hinder or subvert it. It may well be questioned if the first section of the Act of 1861 should not be regarded as valid and of force, as to all the actions ex con-tractu, until it was declared unconstitutional in part, by the Court of Errors. It is, however, unnecessary to conclude anything on that point, as the decision rests on the views already stated.
The statute stood unimpeached for four years without any attempt to test its constitutionality, until the case of the State vs. Carew; during which period there was an acquiescence on the part of creditors, and there would be a manifest injustice in punishing with a forfeiture of a right, traose who rendered an uncomplaining obedience to the expressed will of the Legislature.
T^ie Court is unanimously of opinion that the demurrers wereVroperly overruled in both cases, and the motions to *163 reverse the decision of tlie Circuit Court are refused, and tlie appeals dismissed.
DunkiN, C. J., Glover, J., Muxbo, J., Carroll, 0., iNGLis, A. J., and Moses, J., concurred.
Wardlaw, A. J., being a party, did not sit.
Apyieais dismissed.